BURCHETT v. BRISTOW.	(No. 1562.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 25, 1916. Rehearing Denied April 6, 1916.)

1. APPEAL AND ERROR ☜1064(2)—HARMLESS ERROR—INSTRUCTION.

In proceedings to probate a will, a charge submitting the issue of undue influence and concluding to the effect that mere arguments, persuasions, solicitations, or entreaties by a beneficiary in a will is not that character of undue influence which is contemplated by law when speaking of undue influence, was harmless, if erroneous as a charge on the weight of the evidence, where there was only the very slightest evidence of any conduct on the part of the beneficiaries to which the charge could have been applied in controlling the verdict of the jury on the issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221, 4222; Dec. Dig. ☜ 1064(2); Trial, Cent. Dig. §§ 525, 553.]

2. APPEAL AND ERROR ☜1056(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In proceedings to probate a will opposed by testatrix's illegitimate son on the ground that it has been procured by undue influence and false representations respecting the conduct of himself and brother toward testatrix, the exclusion of a letter written by testatrix to the other 11 years before the will was made, not indicating any special warmth of feeling, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187, 4191, 4207; Dec. Dig. ☜1056(1).]

Error from District Court, Fannin County; Ben H. Denton, Judge.

Proceedings by W. S. Bristow to probate the will of Margaret A. Bristow, deceased. To review a judgment probating the will, William Burchett brings error. Judgment affirmed.

Thos. P. Steger, of Bonham, and J. G. McGrady, of El Paso, for plaintiff in error. C. A. Wheeler, Cunningham & McMahon, and J. H. G. Lee, all of Bonham, for defendant in error.

HODGES, J. This appeal is from a judgment probating the will of Margaret A. Bristow, deceased. At the time of her death the testatrix was married to W. S. Bristow, one of the defendants in error, and was approximately 70 years of age. She had no children at the time of her death, except two illegitimate sons, James Booher and William Burchett, who resided in Kentucky. Her property consisted of an interest in a farm near Ector in Fannin county, and some other real estate at other places. By the terms of her will her property was disposed of as follows: To her two sons, James Booher and William Burchett, she gave the sum of $5 each; to her husband, W. S. Bristow, she

devised all of her personal property and all of her real estate, except her undivided half interest in the homestead of herself and a former husband, consisting of 100 acres of land situated in Fannin county. This portion of her estate was bequeathed to her friend C. R. Henry, subject to a life estate given to W. S. Bristow. Her husband, W. S. Bristow, was appointed sole executor without bond. When Bristow made application to probate the will it was contested by the sons of the testatrix, on the ground of mental incapacity and undue influence. In the trial in the district court the case was submitted on those two special issues, both of which were determined in favor of the proponents of the will. In submitting the issue of undue influence the court gave the following explanatory charge:

"In this connection I charge you that what is meant by undue influence is such influence as compels the testatrix to do that which is against her will, from fear, desire of peace, or some feeling which she is unable to resist. Such influence must in some measure destroy the free agency of the testatrix, and must be sufficient to prevent the exercise of that discretion which the law requires in the exercise of the will. *Mere arguments, persuasions, solicitations or entreaties by a beneficiary in a will is not that character of undue influence which is contemplated by law when speaking of undue influence.*"

To that part of the charge in italics the appellant objected, on the ground that it was on the weight of the evidence. That portion of the contest which alleged undue influence is, in substance, as follows:

The will is void on account of illegal, fraudulent, and undue influence practiced on M. A. Bristow at and before the date of the will, by the beneficiaries W. S. Bristow and C. R. Henry and others acting under their influence, whose names are unknown to the contestants. Such undue influence is more particularly described as follows:

"That at the time of the pretended execution of the said paper, called a will, said decedent, M. A. Bristow, was very weak in body and mind, was then, and had been for some time, upon her deathbed; her mind rendered feeble, impaired and visionary by the use of opiates almost constantly for years; she was 70 years old. And taking advantage of these and other like infirmities, W. S. Bristow and C. R. Henry entered into and carried out a conspiracy to procure said decedent to disinherit her only children and to estrange her from them; and they falsely represented to her, and by fraud and undue influence procured her to believe that her only children, the contestants, had forsaken her and cared nothing for her, and that they were neglectful of her, and that she was almost destitute of the necessities of life, and that she was in need of help from her children and that they were able to administer to her wants and needs, but that they did not do so because they cared nothing for her."

Then follows a series of averments denying the truth of those representations, after which the contest continues:

"Said decedent was made to believe by the representations of said Henry and W. S. Bristow that said Henry had supplied her, free of charge, with wood to keep her warm, and that she was dependent upon his charity, and that he had done a great deal more for her than she had done for him in a financial way, all of which representations were untrue and such beliefs not well founded, for that the truth is said decedent had done a great deal more for said Henry than he had done for her; * * * that W. S. Bristow, by undue and unlawful means unknown to contestants, intimidated said decedent and made her afraid of him and thereby constrained her to pretend to make the alleged will through fear of him; but same was not her act nor her free will, but was the act of said Bristow. And W. S. Bristow took advantage of said decedent's morphine habit to unduly influence her actions and in making the alleged will according to his dictates by depriving her of and threatening to deprive her of such drug."

Those averments may be summarized as follows: (1) That Bristow and Henry entered into a conspiracy to induce the testatrix to disinherit her two sons, and carried out that conspiracy by falsely representing to her that she was in a destitute condition and that her children were able to administer to her wants, but because of their lack of affection had failed to do so. (2) That the testatrix was to some extent dependent upon the charity of Henry; that he had supplied her with wood free of charge, and had done more for her in a financial way than she had ever done for him, thereby placing her under obligations to Henry. (3) That Bristow had taken advantage of the testatrix' fondness for a narcotic and the weakness superinduced by its use, and had, by intimidation and otherwise, caused or coerced her into making the will.

The evidence shows that for some time prior to her death the testatrix was addicted to the habitual use of a narcotic drug, and that she had been gradually growing physically weaker in consequence. Some of the witnesses testified that her mind had become considerably impaired; that she was easily influenced by others; that her will power was apparently very weak. Upon the issue of mental capacity the greater weight of the evidence appeared to sustain the finding of the jury.

The first husband of the testatrix was William Statzer, to whom she was married many years before in Kentucky. Some time after their marriage the couple moved to Texas, leaving the two illegitimate sons of the testatrix in Kentucky; one of whom was raised by her father, and the other by a family not related to them. By Statzer the testatrix had two other children, both of whom died before their marriage and before the death of Statzer, which occurred some time about 1900. Statzer left some property; how much is not definitely stated, but it appears inferentially that his widow had sufficient means to place her above want. A portion of his property he bequeathed to her, and other portions went to charitable purposes. Some time after the death of Statzer the testatrix married W. S. Bristow, who was about 10 or 15 years her junior. She was very ignorant, and was never able to read or write. Her two sons continued to live back in Kentucky, and were both very illit-

erate, neither being able to read or write. Both of them, however, were married and had families. One, it is shown by the evidence, had an estate valued at about $1,500; the other was merely a laboring man, dependent upon his own daily earnings for support of himself and family. It appears that neither of them saw their mother for over 20 years, and one of them never saw her after she left Kentucky. The other, James Booher, visited Fannin county a short time before his mother's death, and spent only a small portion of his time with her. It appears that this visit occurred after the mother had made a will, which failed to make any provision for him and his brother. The evidence indicates that the interchange of letters between mother and her sons was very rare. One letter to James Booher, attributed to her, and which was excluded on objection, was written in 1902, more than 10 years before her death; this seems to have been the last time she wrote to either of her sons.

The only evidence which tends to support any of the charges of undue influence is the fact that the two sons were disinherited and a bequest made to Henry, a man in no way related to the testatrix, and the testimony of one of her neighbors concerning a conversation with Mrs. Bristow some time prior to her death. This testimony was, in substance, that Mrs. Bristow referred to the fact that the neighbor had an excellent husband, and his wife could do as she pleased about matters in which she had an interest; that Mrs. Bristow then expressed regret that she (Mrs. Bristow) was not allowed the same liberty; that she could not do as she pleased with everything. There was no direct evidence that any persuasion, arguments, solicitations, or entreaties had ever been used; in fact, that character of undue influence was not alleged.

There were three witnesses to the will. One of these, C. M. Wheeler, testified that he was 80 years of age and had known the testatrix quite well for some time. The substance of his testimony is that the will offered for probate was written by his son, an attorney at law, and at the special instance of Mrs. Bristow; that in response to her request witness wrote his son to visit Mrs. Bristow for that purpose; that when he arrived she gave in a general way an outline of the provisions she desired incorporated in the will. His testimony excludes the inference that there was any persuasion, solicitation, or entreaty used at the time, or that any had been used prior to that time. Another one of the subscribing witnesses testifies substantially to the same effect.

[1] Even if we concede that the charge complained of was erroneous, when considered in the abstract, it could have had no harmful effect, because there was no evidence of any conduct to which it could have been applied in controlling the verdict of the jury upon the issue of undue influence.

There is no evidence, other than the circumstances previously referred to, which tends to show that any compulsion or any wrongful influence was brought to bear upon the testatrix to induce her to make the will. There is, on the contrary, testimony to the effect that the testatrix had voluntarily stated, previous to the making of the will, that her children had never shown her that attention and affection which she had a right to expect. There was also testimony tending to show that Mrs. Bristow was permitted by her husband to manage her interest in the property which was bequeathed to Henry.

[2] There are two other assignments of error, one of which complains of the exclusion of a letter which purported to have the signature of the testatrix and was addressed to her son James Booher. It seems to have been conceded that Mrs. Bristow was unable to write, and there was no evidence offered to prove that the letter was written at her dictation, except its contents, the fact that it was postmarked Bonham, Texas, and was received by James Booher in the due course of mail. The date of the postmark shows that the letter was written in 1902, about 11 years before her will was made. It does not indicate any special warmth of feeling toward her son. Even if it were otherwise, 10 or 11 years of separation thereafter was sufficient to cause an estrangement resulting from real or fancied indifference or neglect. It is altogether improbable that the verdict of the jury would have been different had this letter been admitted.

The issue and testimony in this case are somewhat similar to those in Mayes v. Mayes, 159 S. W. 919, to which appellant refers. It was there held that the evidence, which is but little, if any, weaker than that offered by contestants, was insufficient to sustain a finding that undue influence had caused the execution of the will offered for probate. Chief Justice Pleasants, who wrote the opinion, said:

"The court finds, and the uncontradicted evidence fully sustains the finding, that the deceased had testamentary capacity and that the will was read to him at the time he signed it and he knew his property and the objects of his bounty. The testimony of the witnesses to the will and all of those who knew of its execution shows that the deceased dictated the terms of the will without suggestion from any one, and that the disposition of his property made by the will was his voluntary act conceived in his own mind uninfluenced or aided by the advice or suggestion of any one. If this is true, the fact that the will is unreasonable, unnatural, and unjust will not authorize the court to set it aside. The right of the owner of property to dispose of it by will to whomever he may choose is a valuable right which should not be denied because such disposition is not in accord with that which is generally regarded as natural, reasonable, and just."

We have carefully considered all of the assignments, and have examined the testimony, and feel warranted in saying that had all the proffered evidence been admitted, no other finding upon the issue of undue influ-

·ence could be sustained. For that reason we ·deem it unnecessary to discuss the remaining ·assignments.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes